## I. C. Foote and Elisha Litchfield *against* Colvin and others.

Where the owner of land agrees with another that he may sow the land on shares, they may maintain a joint action of trespass against a third person who cuts and carries away the crop. If A. buys land with the money of B. and takes a conveyance to himself, he is a trustee for B. Such an implied or resulting trust is not within the statute of frauds, and may be proved by parol; and the land may be seized and sold on an execution under a judgment against B. the *cestui que trust*.

THIS was an action of trespass. The declaration contained two counts. The first was for entering the close of the plaintiffs, treading down the grass, &c. cutting and carrying away the corn, &c. The second count was for taking and carrying away 400 sheaves of rye, and 4,000 sheaves of wheat, of the value of, &c. of the proper goods and chattels of the plaintiffs. The defendants pleaded not guilty, with a notice subjoined to the plea, that *Colvin*, one of the defendants, would give in evidence at the trial, that the *locus in quo,* mentioned in the first count, was his freehold, &c. and that the other defendants would also give in evidence, that the *locus in quo,* &c. in that count, was the freehold of the said *Colvin*, and that they, as his servants and by his command, entered, &c.

The cause was tried at the *Albany* circuit, in *April,* 1807, before Mr. Chief Justice *Kent.*

At the trial, the plaintiffs abandoned the first count and proceeded on the second only.

It was proved, that *Litchfield,* one of the plaintiffs, in the autumn of 1805, sowed about fourteen acres with rye, on a farm called *Sowls'* farm, which on the 12th *May,* 1804, had been conveyed by *Jonathan Sowls* to *Foote,* the other plaintiff, in fee ; that it was agreed, that *Foote* should have one-third of the crop, and *Litchfield* the remainder, to be divided upon the field. It was also proved, that the defendants cut and carried away about two-thirds of the crop. It appeared that *James Litchfield* the father of one of the plaintiffs, lived with his family on the farm when the rye was sown, and that when it was cut, one *Brett* was in the actual possession of the farm, as a tenant under *Foote,* the other plaintiff. The value of the rye cut and carried away was proved.

The defendants then moved for a nonsuit, on the ground that the plaintiffs, not having shown a joint property in the rye, could not recover, but the objection was overruled.

The defendants then offered to give in evidence, that one *Hunt* obtained a judgment in this court against *James Litchfield* for 7,500 dollars debt, which was docketed the 18th *July*, 1803 ; that the farm in question was purchased by the plaintiff, *Foote*, with the money of *James Litchfield*, for the express purpose of avoiding the effect of that judgment ; that immediately after the purchase, *James Litchfield* entered and was in possession until the winter of 1806, after the rye was sown ; that he then absconded with his family ; that the farm was then leased to *Brett* by *Foote*, who appeared as owner, but who never had been in the actual possession ; that *Litchfield* the other plaintiff, was a minor, and lived and worked with his father, *James Litchfield*, and that the agreement between him and *Foote* about the division of the crop, was made with the privity of *James Litchfield*, and with an intent fraudulently to cover the property in the rye, and to defeat any execution on the judgment in favour of *Hunt* ; that the sheriff, by virtue of an execution on that judgment, on the 26th *June*, 1806, sold and conveyed to the defendant *Colvin*, all the estate, right, title and interest of *James Litchfield* in and to the said farm, and that *Colvin*, and the other defendants, by his command, and as his servants, peaceably entered upon the land, and cut and carried away the rye. But this evidence, thus offered by the defendants, was rejected by the chief justice, because it was inadmissible under the general issue, and because if admitted, it would merely establish a trust estate in *James Litchfield*, of which a court of law could not take notice.

The jury found a verdict for the plaintiffs.

A motion was made to set aside the verdict, and for a new trial :

1. Because, the plaintiffs did not prove a joint property in the rye:

2. Because, the evidence offered by the defendants, and overruled by the judge, ought to have been admitted.

*Henry*, for the defendants. 1. In a joint action of trespass it is necessary for the plaintiffs to show a joint interest or property in the thing which is the subject of the suit. *James Litchfield* was in possession of the farm, but *Foote*, one of the plaintiffs, never was in possession. The agreement as to the division of the crop was between the plaintiffs, *Foote* and *Elisha Litchfield*. *Foote* could have no interest in the crop until after the severance. In *England*, a parson is entitled to a tenth of the crop, but he can maintain no action for *predial* tithes until after severance. The relation between *Foote* and *Litchfield*, the plaintiffs, is that of landlord and tenant. *Buller* (*N. P.* 85.) says, " if *J. S.* agree with the owner of the soil to plough and sow the ground for half of the crop, *J. S.* may have his action for treading down the corn, and the owner of the soil is not jointly concerned in the growing corn, but is to have half after it is reaped, by way of rent, which may be of other things than money." *Foote*, therefore, is the only person to maintain trespass in this case.

2. But the ground on which the defendants principally rely in this case is, that the evidence offered by the defendants and overruled, was proper and admissible. That *Elisha Litchfield* was a minor and the son of *James Litchfield*, is a strong circumstance to induce a belief, that the transaction was fraudulent in regard to *Hunt*, the judgment creditor. The facts must be taken to be according to the evidence offered. So that there was a clear resulting trust to *James Litchfield*. Such a trust is not within the statute of frauds, and may be proved by *parol*. By the 4th section of the act concerning uses,* the sheriff is authorised " to seize in execution all such lands, &c. as any other person or persons be, in any manner of wise seised or possessed to the use, or *in trust* for him against whom execution

* *Rev. Laws*, v. 1. p. 68.

NEW-YORK,
May, 1808.

Foote
v.
Colvin.

is sued," &c. It is the disposition of the legislature and of the laws of this state, to give creditors a power to take every species of property belonging to the debtor, and to apply it to the satisfaction of his debts. Thus it has been decided, that an equity of redemption may be sold by the sheriff on a *fieri facias* against the property of a mortgagor.*

Again, every thing which amounts to a denial of the right of action may be given in evidence by the defendant in an action of trespass, under the general issue.† The question always is, who was the owner of the land, and the defendant may show that he had a title or right to the possession.

*Kirtland* and *Champlin*, contra. The plaintiffs in relation to the crop, are to be considered as tenants in common, having a joint interest in it, for which they may bring a joint action. In the case of *Hare* and others v. *Celey*,‡ it was decided that persons situated like the present plaintiffs, were tenants in common, and might bring a joint action for spoiling the corn, though the owner of the fee alone could maintain trespass *quare clausum fregit*. The case of *Welch* v. *Platt*, cited from *Buller*, (*N. P.* 85.) is taken from a manuscript, and is not law.

This may be considered like an action of ejectment. There can be no doubt that *Foote* had the legal estate, against which no equitable interest ought to be allowed to be set up by the defendants. But it is not alleged that *James Litchfield*, though he might be a *cestui que trust* as to the land, had an interest in the crops; crops are considered as chattels, and not as inseparably incident to the freehold. It does not follow, therefore, that the judgment creditor, admitting the *lien* on the lands of the debtor, would have a right to the crops. Again, the matters offered in evidence, ought to have been pleaded by way of justification, so as to give the plaintiffs an opportunity to reply, and were not proper or admissible as evidence under the general issue.§

* *Caines' Cases in Error*, p. 47. *Waters and others* v. *Stewart.*
† *Bac. Ab. trespass*, (K.) *Buller, N. P.* 90. 7 *Term*, 354. 8 *Term*, 403.

‡ *Cro. Eliz.* 143.

§ 1 *Str.* 61. 1 *Ld. Raym.* 732. *Salk.* 287. 3 *Term*, 292. *Cro. Eliz.* 329.

NEW-YORK,
May, 1808.

Foote
v.
Colvin.

* 1 *Peere Wms.*
321.

† *Prec. in Chan.*
84. See also,
*Roberts on*
*Frauds,* 94. and
Note (39.)

But admitting that the land was purchased with the money of *James Litchfield*, and that this would create an implied or resulting trust, still parol proof was not admissible to establish this trust, against the express words of the deed to *Foote*. In the case of *Ambrose* v. *Ambrose*,* Lord *Hardwicke* considered it within the statute, and that a declaration in writing was necessary to establish such a resulting trust. So, in *Kirk* v. *Webb*,† it was held, that where *A.* purchases land with the money of *B.* a resulting trust for *B.* could not be created by parol, because it would contradict the deed, and would be directly against the statute of frauds.

*Henry* in reply. The case of *Hare* and others v. *Celcy*, applies only to the first count of the declaration in this cause, which was abandoned at the trial. In that case each party furnished the seed, and were considered as tenants in common.

Wherever a person purchases land, he takes the corn growing as an incident, unless the crops can be claimed as *emblements*. If the crops are chattels, then the plaintiffs are entitled to a proportion of them, but if they passed with the land, they are entitled to the whole, on the ground of the interest of *James Litchfield* as a *cestui que trust*.

SPENCER, J. delivered the opinion of the court. On the motion for a new trial the defendants' counsel have insisted,

1. That the plaintiffs did not prove a joint property in the rye, which was the subject of the suit.

2. That the parol evidence offered and overruled, ought to have been admitted, to show that *James Litchfield* furnished to *Foote* the purchase money, with which the *locus in quo* was bought; as it created a resulting trust for *James Litchfield*.

3. That such resulting trust estate was liable to be sold on the execution issued at the suit of *Hunt*, and being sold to *Colvin*, he thereby acquired the legal interest in the land, and in the growing crop.

4. That the evidence thus offered and overruled was proper under the general issue.

On the first point, I am inclined to think that the plaintiffs had a joint property in the growing crop. Assuming for the present that *Foote* was the legal owner of the land, *E. Litchfield* sowed on shares, and on reaping the crop, they were to have it in certain proportions. This case differs from that of *Newcomb and others* v. *Ramer*, (2 *Johnson*, 421. in the notes) in this, that the rent was of no proportion of the crop, but was specific as to the amount. This opinion is supported by the case of *Hare and others* v. *Celey*, (*Cro. Eliz.* 143.) and seems best to promote the intentions of landlord and tenant. If the portion reserved for the landlord was to be considered as rent, and in which he had no interest until severance and delivery, it would put it in the power of tenants clandestinely to alienate the produce of the land, to the injury of the person who had enabled them to raise the crop.

The second point has been virtually decided in the case of *Jackson, ex dem. Kane* v. *Sternbergh.** In that case *Kane* had obtained a judgment against *Sternbergh*, and his lands were sold on an execution to *Cox*, at the instance of the plaintiff. The sheriff gave a deed to *Cox*, and he conveyed to the plaintiff. It was decided, that the lessor of the plaintiff was the real purchaser, by *Cox*, his agent, and that his purchase was a resulting trust, which might be proved by parol. It seems to be perfectly well settled, that if *A.* buys land, and takes a conveyance in the name of *B.* it is a resulting trust for him who pays the purchase money, raised by implication of law, and, therefore, saved by the statute. There is a diversity of opinion, whether, notwithstanding such trusts are not affected by the statute, there should not be a declaration in writing, or an acknowledgment in the deed from whom the consideration moved. In the case of *Ambrose* v. *Ambrose*,† the Lord Chancellor is reported to have said, that " it plainly appearing upon the evidence on both sides, that

* 1 *Johnson*, 45. in note.

† 1 *P. Wms.* 323.

* Gascoigne v.
Thwing.

† Rev. Laws,
vol. 1. p. 68.
sec. 4.

the consideration money of this purchase was the proper money of *A.* had it not been for the statute of frauds, this would have made a resulting trust." However great the authority of Lord *Hardwicke* deservedly is, he is opposed by various decisions, and the opinions of elementary writers. The cases in 2 *Vent.* 361. and 1 *Vern.* 367.* consider such trusts as saved by the statute without any deed declaring them, it being required that the proof should be clear, that the purchase money was really the property of him who claims the estate. To the same effect are 3 *Woodeson,* 439. and 21 *Vin.* 497. in the notes. In the present case the evidence offered and overruled, would, we are to presume at present, have established the fact, that the farm was purchased with *James Litchfield's* money, and that *Josiah C. Foote* was the mere pipe of conveyance. This proof would consequently have shown an estate in *James Litchfield,* liable to be sold on execution, under the 4th section of the act concerning uses.† Indeed, without the aid of that statute, I consider *James Litchfield,* if he advanced the purchase money, as having an interest liable to be sold on execution. This evidence, then, was improperly overruled.

There may be an interest in growing crops in one man, whilst the title to the land is in another. The one does not necessarily follow the other; but when the right to any portion of the crop exists in the owner of the soil, there, unless in certain excepted cases, the ownership of the land draws after it that of the crops, and it cannot admit of a doubt, that a sale of the land simply, by the owner both of the land and crop, carries the property of the crop to the purchaser. If a voluntary sale would do this, a sale under an execution will produce the same consequences. It follows, then, that *Foote,* being a trustee for *James Litchfield,* and it being a resulting trust susceptible of parol proof, and the interest of *Litchfield* being vendible under execution, *Colvin,* as a purchaser on the sheriff's sale, acquired all *Foote's* right, both to the land and the crop. *Foote* then ceased to have any interest, and, in this point of view the

proof would have shown that the plaintiffs had not a joint interest in the rye.

This was proper evidence under the general issue, it being a settled and established principle, that any thing may be given in evidence that amounts to a denial of the right, (and particularly of a freehold in the defendant) to the *locus in quo.* (7 *Term,* 355. 8 *Term,* 405. 1 *Ld. Raym.* 732. 1 *Leon.* 301. *Gilb. Ev.* 258.)

The court are of opinion, that a new trial ought to be granted, with costs to abide the event of the suit.

New trial granted.