## MICHAEL SMITH *against* JAMES JOHNSTON.

By a sale, conveyance and delivery of possession of land, the grain growing thereon does not pass to the vendee.

Writ of error to the Common Pleas of Columbia county, where it was an action of trover, brought by *Michael Smith* against *James Johnston.*

The case was this: *Charles Clark* being the owner of a farm, had leased it to *Michael Smith,* the plaintiff in error, who was also the plaintiff below, for one year, which was to end on the 1st April, 1828. The terms of the lease were, that the tenant was to deliver a certain portion of the grain to the landlord, in the bushel. In the month of February, 1828, *Clark* sold the farm to *Johnston,* the defendant, and conveyed it to him by deed in common form. *Johnston* went into possession on the 1st April, 1828.

The question of law which arose in the case was, whether *Johnston,* the purchaser, was entitled to the landlord's share of the grain in the ground, which was reaped in the harvest of 1828.

The court below was of opinion, that the deed from *Clark* to *Johnston,* conveying the farm, " and the rents, issues and profits thereof," vested the right to the landlord's share in the purchaser of the land, and the jury found accordingly.

*Frick,* for plaintiff in error, contended that grain growing in the ground is personal property, and will not pass by a conveyance of the land. *Toll. Law of Ex.* 149. By the act of assembly, a sheriff's deed conveys real estate as fully as the defendant could convey it; and it was held in *Myers* v. *White,* 1 *Rawle,* 356, that a sale by the sheriff of land, upon a *Lev. Fas.* on a mortgage, did not pass the grain growing thereon.

The right to the grain was a personal right, which accrued to the landlord the moment the grain was sown.

*Grier,* for defendant in error. The conveyance of the land, and the rents, issues and profits thereof, is a conveyance of every thing growing upon the land. *Foote* v. *Colvin,* 3 *Johns. Rep.* 222.

The opinion of the court was delivered by

Gibson, C. J.—It is a little remarkable that the precise point in this case, has not been decided in England or this country. The reason may be, that the subject is usually disposed of by some preliminary stipulation. There is, indeed, a *dictum* of Mr. justice Spencer, in delivering the opinion of the court, in *Foot* v. *Colvin,* 3 *Johns.* 222, that a sale of the land simply, by the owner of both the land and the crop, carries the crop to the purchaser; which, with great respect for the opinions of that learned judge, seems to be unsupported by decision or analogy. Mr. *Roberts* is the only elementary writer who asserts that the products of the soil, whether

(Michael Smith *v.* James Johnston.)

spontaneous or cultivated, accompany the freehold until they are actually severed, unless when sold in prospect of such severance; and the cases referred to in the margin of the book, *Roberts on Frauds*, 126, certainly do not prove that corn growing is as much a part of the freehold as grass or timber trees; or that it is part of the freehold at all. On the contrary, all the authorities agree, that as against the heir, it goes to the executor, though it seems to be settled that it passes by a devise of the land, and, in conformity to authority, it was so determined by this court, in *McCullough's Appeal*, 4 *Yeates*, 23. The reason for this distinction, attempted in *Gilbert's Evidence*, 250, is, that "every man's donation being taken most strongly against himself, shall pass not only the land itself, *but the chattels which* BELONG *to the land;* but no chattels can descend to the heir: they go to the executor. Why this is accounted a chattel, we have shown already." And in doing so, he had just given a few quaint, but substantial reasons why corn growing does NOT belong to the land. "It follows," the chief baron had said, "that there ought to be another property in the corn, *distinct* from the land, inasmuch as there is labour in acquiring and sowing the corn distinct from the labour whereby the land was at first occupied and gotten; also, there is a distinct charge in sowing the corn from the money whereby the land was purchased. The law, following nature, doth erect a *distinct* property in the corn, *different* from the land.". And again, "there is a property in the corn, distinct from the soil, before the corn is committed to the earth, and that property is not lost by sowing in a man's own soil; for I cannot loose the property of what is my own, by putting it in a place which is also my own. But if I sow my corn in another man's soil, it ceases to be mine." Still further. "Because a man expects a yearly return of the corn he sows, it is reckoned part of his PERSONAL estate, as the corn was before it was sown. But otherwise of timber trees planted, for they must be supposed to be annexed to the soil, since they were planted, with the prospect that they could not come to their full use and perfection, till many generations afterwards." Thus far chief baron *Gilbert*, who gives good reasons why the growing crop should be considered a chattel, in contra-distinction to timber trees; and satisfactorily exposes the foundation of the rule by which a tenant having attempted to retain the ownership of the land after the expiration of his estate by sowing it out of season, looses the crop, as in the case of an adverse recovery; but who, in the opinion of Mr. *Hargrave*, is less happy in accounting for the distinction which gives corn growing to a devisee, but denies it to the heir. *Co. Litt.* 55, *b. note* 2. The truth is, the distinction rests altogether on authority, but authority so unquestionable as not to be shaken. Even in point of reason, however, a further distinction might be taken between a will, in the construction of which a presumption of intention may be raised from circumstances, and a deed of which the

(Michael Smith *v*. James Johnston.)

construction is to be made from the technical effect of the words. Now in *Poole's* case, 1 *Salk.* 368, corn growing is said without qualification to be a chattel; and the same thing is asserted in *Whipple* v. *Foote*, 2 *Johns.* 452. *Newcomb* v. *Ramer, Id. in note,* and *Stewart* v. *Doughty,* 9 *Johns.* 108, as well as by chief baron *Gilbert* in the passages just quoted. As a chattel, then, there is no reason why it should pass by a bargain and sale of the land, which would not be equally applicable to cattle depastured on the land. But whatever may be the law in England or our sister States, it is clearly settled by usage and judicial decision here, that, except by devise, the crop does not pass as parcel of the land. The practice of reserving the crop has, I believe, been universal; insomuch that when the reservation is not expressly declared, it is nevertheless a tacit condition of the contract. In the very case at bar, it appears from the evidence sent up, that the vendee had no thought of claiming the crop, till it was suggested by a neighbor. In accordance with the popular notion, grain in the ground was treated as a chattel, in *Welsh* v. *Becky*, 1 *Penns'a.* 57. and subjected to the rule which requires an actual or a symbolical delivery in the case of a conditional sale. Still nearer to the point is *Myers* v. *White*, 1 *Rawle*, 353, in which it was determined that the sheriff may not sell grain in the ground, by virtue of a *levari facias* on a mortgage; and in *Stambaugh* v. *Yeates, MSS Chambersburg*, 1828, it was held, that, although it may be sold as personal property on a *fi. fa.* it does not pass by a levy and sale of the land on a *venditioni exponas*. According then to an incontestible principle asserted in *Foote* v. *Colvin*, that a sale on an execution passes whatever the debtor might pass by a voluntary conveyance, the preceding case is substantially in point. If the crop be an accessary of the land, it will follow its principal as readily by the one conveyance as the other: if it be not, I know not how it is to pass by words inapplicable to it in either. It seems, therefore, the judge who tried the cause, erred in directing the jury, that in the absence of an actual reservation the crop would go to the vendee.

Judgment reversed, and a *venire de novo* awarded.