WINTERMUTE *vs.* LIGHT.

Where the owner of land conveys the same, by an absolute conveyance, *wine plants*, set in the ground and growing there at the time, will pass by the conveyance, notwithstanding a *parol reservation* thereof, by the grantor.

In September, 1863, S. being in possession of land as tenant of W., under a lease that would not expire until April, 1865, had growing thereon certain wine plants, which he had set out in June, 1863.   He purchased the premises of W., and took a conveyance thereof, in said month of September, at the request of L., and for his benefit, and upon the understanding that he was to occupy the farm, as L.'s tenant, until April, 1864.   He paid W. a part of the purchase money, which L. had furnished for that purpose, and gave a mortgage on the land, to secure the balance.   S. then executed a deed of the land to L. subject to the payment of the mortgage.

*Held* that the effect of the agreement and of S. purchasing the farm from W. and conveying it to L. was to make S. the tenant of L. instead of the tenant of W., from the date of such conveyance, until April, 1864.

That S. having set out the wine plants as tenant, his change of landlords did not divest him of his title to the same.   And that the fact that the legal title to the farm passed through him, in changing his landlords, did not alter his

Wintermute *v.* Light.

rights as tenant; because of the agreement, by which it was stipulated that he should remain a tenant.

*Held, also,* that the facts of the case did not justify the admission of evidence to vary the effect of the deed from S. to L., by showing that at the time such deed was executed or delivered, S. made a parol reservation of the wine plants.

Wine plants, growing upon a farm, are, as between landlord and tenant, personal property, and the latter has a right to remove them.

If the tenant executes a mortgage upon such plants, the same is valid, as between the parties to it, and will enable the mortgagee, by foreclosure and sale, to acquire the mortgagor's right of removal.

THIS was an action to recover damages for the conversion of five hundred wine plants. The plaintiff claimed to have derived title to the plants under a personal mortgage, dated the 26th day of September, 1863, which was given to him by Matthew Staring. The plants were set in the ground on a farm in Chemung county, by Staring, in June, 1863. He then occupied the farm as tenant of John E. Westlake, and the former continued so to occupy the farm as tenant of the latter until the 23d or 26th day of September, 1863, and Staring's tenancy under Westlake would not have expired until the spring of 1865, if the farm had not been sold as hereinafter stated.

The defendant agreed with Staring, in September, 1863, that if the latter would buy the farm of Westlake for $4500, for him, he would pay Staring $50, and also give him the use of the farm, under his lease from Westlake, until the spring of 1864. About the 23d day of September, 1863, Staring purchased the farm of Westlake for $4500 and paid Westlake $1000 down, which he had received of the defendant for that purpose. Staring took a deed of the farm to himself as grantee, which was dated the 26th day of September, 1863, though the certificate on it of the grantor's acknowledgment of the same is dated the 23d day of that month, in the same year. Staring gave Westlake a mortgage on the farm for $3500, to secure the unpaid portion of the purchase money. He gave the defendant a deed of the farm, dated the 26th day of September, 1863, though the certifi-

cate on it of the grantor's acknowledgment thereof is dated the 23d day of that month, in the same year. This deed was subject to the mortgage on the farm that Staring gave to Westlake, for $3500, and the deed contained a covenant by the defendant to pay that mortgage.

Some evidence was given that tended to show the two deeds above mentioned were executed and delivered on the 23d day of September, 1863, notwithstanding they were dated the 26th day of that month. And some evidence was also given to show that Staring executed the personal mortgage, above mentioned, to the plaintiff on the 23d day of September, 1863, though it bears date the 26th day of that month.

The defendant paid Staring the $50 he promised him, and permitted him to occupy the farm until April, 1864. The plaintiff employed a person to sell the property mentioned in his personal mortgage from Staring, at public auction, in February, 1864, and the plaintiff then bid off the same, including the wine plants in question. The defendant took possession of the farm about the 1st of April, 1864, as owner. The plaintiff then requested the defendant to permit him to take off the wine plants in question, which were then remaining in the ground, on the farm, as they grew the previous year ; but the defendant refused to permit him to take them away, and kept them.

The plaintiff was permitted to prove, subject to an objection and exception on the part of the defendant, that Staring reserved the wine plants by a parol agreement, when he conveyed the farm to the defendant.

A witness for the plaintiff testified that wine plants are usually taken out of the ground every year, and that that is the best way to cultivate them, but that they would do very well by leaving them two years in the ground ; that the plant is a species of rhubarb, and that it is cultivated in the same manner that rhubarb is ; that it will continue to grow, in proper soil, for a number of years, like raspberries, grapes or hops ; that the cultivation of it is similar to that .

of hops, and that it is usual for persons cultivating wine plant roots for wine, to replant them every year or every second year; that they may be set out in the spring or fall. Evidence was given as to the value of the plants in question.

The plaintiff introduced in evidence, under the defendant's objection and exception, an assignment to him from Staring of the lease of the farm the latter had of Westlake. But it is not set out in the case, nor is its date given.

The defendant's counsel moved for a nonsuit, on eight different grounds, among which were, that the roots or plants not being annual productions of the land, were real property and all parol agreements in relation to the same were void; that the chattel mortgage did not pass the title to the wine plants to the plaintiff; they at the time of its execution being in the ground and real property, and never since having been severed from the soil; that the title to the wine roots which were growing in the ground passed to the defendant by the deed to him from Staring. The motion for a nonsuit was denied, and the defendant's counsel excepted.

The defendant testified that Staring made no reservation of the wine plants, and that he had never conceded that they belonged to Staring or to the plaintiff.

The plaintiff gave some evidence that tended to show the defendant recognized Staring to be the owner of the plants in question after the defendant took his deed of the farm.

The defendant's counsel requested the court to direct the jury to find a verdict in favor of the defendant, which the court refused to do, and the defendant's counsel excepted.

The court submitted the question to the jury whether Staring, in making the arrangements with the defendant, omitted to inform him that he had any interest in the farm except to remain on it until the next spring; to which the defendant's counsel excepted.

The court charged the jury, in substance, that the title to the farm was to be considered as having been transferred directly from Westlake to the defendant; and the fact that

the title passed through Staring, his agent, did not entitle him to the plants, as having purchased them from Staring. This portion of the charge was excepted to by the defendant.

The defendant's counsel, among other things, requested the court to charge the jury that the plants were real property while growing in the ground, which was refused, and the defendant's counsel excepted; that the conveyance from Westlake to Staring passed the legal title to the land to the latter, and that the conveyance from Staring to the defendant passed the legal title to the land including the wine roots in question, to the defendant, which was refused, and the defendant's counsel excepted; that there can be no parol exception or reservation of such property as wine plants, while growing in the ground, on conveying the land by deed, which was refused, and the defendant's counsel excepted; that all prior negotiations between Staring and the defendant were merged in the deeds, and the roots not being reserved or excepted in the conveyances, the title to them passed by the deeds, which was refused, and the defendant's counsel excepted.

The court charged the jury in substance, that Staring acted as agent of the defendant in purchasing the farm and conveying it to the defendant, and did not lose title to the plants by his conveyance to the defendant; which was excepted to by the defendant's counsel.

Any other facts that are necessary to a correct understanding of the decision of this court are sufficiently stated in the opinion.

The jury rendered a verdict in favor of the plaintiff for $59.28 damages. The defendant's exceptions were directed to be heard in the first instance at the general term of the court, and judgment in the meantime was suspended.

*W. L. Dailey,* for the plaintiff.

*E. H. Benn,* for the defendant.

BALCOM, J. · The law as to what will pass by a deed of 'and is stated by Chancellor Kent in his *Commentaries, 'vol.* 4, *p.* 549, *9th ed.*) to be, that, "Upon a conveyance of .and and delivery of possession, it has been adjudged that :he growing grain does not pass to the vendee, for it is :leemed to be personal estate. (*Smith* v. *Johnson,* 1 *Penrose,* ·471.) A contrary rule was, however, previously declared in *.Foote* v. *Calvin,* (3 *John.* 216,) and likewise in *Kittredge* v. *Woods,* (3 *N. H. Rep.* 503.) If the land be sold without any reservation of the crops in the ground, the law is strict, as between vendor and vendee ; and I apprehend the weight of authority to be in favor of the existence of the rule that the conveyance of the fee carries with it whatever is attached to the soil, be it grain growing, or any thing else ; and that it leaves exceptions to the rule to rest upon reservations to be made by the vendor. The rule was so understood and declared in *Crews* v. *Pendleton,* (1 *Leigh's Virg. R.* 297.")

The case of *Smith* v. *Johnson,* first above cited, was decided by the Supreme Court of Pennsylvania, in 1830 ; but it was overruled by the same court in 1838, in *Wilkins* v. *Vashbinder,* (7 *Watt's R.* 378,) where it was adjudged that a conveyance of land conveys the grain growing upon it to the purchaser ; and that the fact that the vendor took care of the grain growing, and the fences around it, after the conveyance, without objection from the vendee, does not alter the rights of the parties. The Supreme Court of Arkansas decided, in 1849, that where a party executes an absolute deed in fee of the soil, without reservation of the growing crop, his interest in such crop also passes by such conveyance ; and that a reservation of the crop can not be established by parol evidence. (*Gibbons* v. *Dillinghamton,* 5 *Eng. R.* 9.) But the latter proposition has been repudiated in Ohio and Pennsylvania. (*See Baker* v. *Jordan,* 3 *Ohio Rep. N. S.* 438 ; *Lauchner* v. *Rex,* 20 *Penn. R.* 464.)

The Supreme Court of this state decided, in *Austin* v. *Sawyer,* (9 *Cowen,* 39,) where A. quit-claimed land to W. on

which a crop of wheat was growing, reserving the wheat by
parol, both at the time the quit-claim was executed and in a
previous conversation, when it was agreed by the parties that
it should be reserved, that such reservation was inadmissible
to contradict the conveyance in writing, which carried the
title of the wheat with the land. (*See Hilliard on Real
Property, vol.* 1, *3d ed.* 11, 12.) The correctness of this
rule has never been questioned by any court in this state, and
we must adhere to it so far as it is applicable to this case.
It settles the question that the wine plants in dispute could
not be reserved, by parol, by Staring, from the effect of his
deed of the land to the defendant.

But another question is whether the facts we shall pres-
ently state do not prevent that deed from vesting the title
to the plants in the defendant. Staring was in possession of
the land as tenant of Westlake, in September, 1863, under
a lease that would not expire until April, 1865. He set
out the wine plants in June, 1863. He purchased the land
of Westlake and took a warranty deed of it from him, in
September of that year. He made the purchase at the
request of the defendant and for his benefit, and upon the
understanding that he was to occupy the farm as tenant
until April, 1864. He paid Westlake $1000 towards the
farm, which money he received of the defendant for that pur-
pose. He gave a mortgage on the farm to Westlake to
secure the payment of the residue of the purchase money,
which was $3500. It is true that the defendant testified
and insisted that he did not authorize Staring to take a deed
of the farm to himself, or to give the mortgage. But when
he was informed what Staring had done, he took a warranty
deed of the farm from him subject to the payment of the
mortgage Staring had given thereon, in which deed he cov-
enanted to pay such mortgage. The effect of the business
was the same that it would have been if Staring had taken
a contract of Westlake for the farm to the defendant and
had paid the $1000, thereon, and the defendant had then

taken a deed of the farm from Westlake and given him a mortgage thereon for the remainder of the purchase money.

The defendant agreed to pay Staring fifty dollars for buying the farm, and to allow him to occupy it, as his tenant, until April, 1864, without paying any rent therefor. The defendant .paid the $50 to Staring and permitted him to occupy the farm until April, 1864, without exacting any rent of him. These facts and circumstances did not justify a variation of the legal effect of the deed from Staring to the defendant by evidence that the former made a parol reservation of the wine plants when he· executed the deed or delivered it to the latter. But as soon as Staring delivered his deed to the defendant he became the tenant of the latter, of the farm, until the following April, by virtue of the agreement between them that he should be such tenant; and he was in possession of the farm as such tenant from the delivery of that deed. The effect of that agreement and of Staring purchasing the farm of Westlake and conveying it to the defendant, was to make Staring the tenant of the defendant instead of Westlake, from the date of such conveyance until April, 1864. That was all. He had set out the wine plants as tenant, and his change of landlords did not divest him of his title to the same. The fact that the legal title to the farm passed through him, in changing his landlords, did not alter his rights as tenant; for the agreement by which it was done, and which stipulated that he should remain a tenant, was executed. His mortgage of the wine plants to the plaintiff, on the 26th day of September, 1863, was therefore valid, and the plaintiff acquired the legal title to the same when he purchased them by virtue of the sale under his mortgage in February, 1864.

The mortgage was good as between the parties to it, and as· the defendant had no title to the wine plants, he was never in a position to question its validity, though it had not been filed in the office of the town clerk.

The wine plants were personal property, as between Star-ing, the tenant of the farm, and the defendant, who was his landlord. Staring had the right to remove them from the farm, and his mortgage to the plaintiff enabled the latter to acquire the same right. (*Smith* v. *Jenks*, 1 *Denio* 580. *S. C.* 3 *id.* 592. *S. C.* 1 *Comst.* 90. *Smith* v. *Benson*, 1 *Hill*, 176. *Ford* v. *Cobb*, 20 *N. Y. Rep.* 344. *Warren* v. *Leland*, 2 *Barb.* 613. 1 *id.* 542, *Whipple* v. *Foot*, 2 *John.* 418. *Stewart* v. *Doughty*, 9 *id.* 108.)

The plaintiff had a perfect title to the wine plants, and the only questions for the jury were whether the defendant converted the plants, and the amount of damages the plain-tiff was entitled to recover; and no error was committed on either of those questions.

No error was committed by the judge by the rejection of any evidence offered by the defendant, and whatever errors he committed by the admission of evidence offered by the plaintiff, were wholly immaterial and did not affect any legal right of the defendant, in the least. The defendant was no more prejudiced by the erroneous admission of evidence of a parol reservation of the plants by Staring, when he con-veyed the farm to him, than he would have been by proof of the health of the parties at that time.

As the plaintiff was clearly entitled to recover, upon the undisputed legal evidence in the case, the defendant's motion for a new trial should be denied, with costs. (*See Austin* v. *Sawyer*, 9 *Cowen*, 39.)

PARKER and MASON, JJ. concurred.

BOARDMAN, J. dissented.

Motion for new trial denied.

[BROOME GENERAL TERM, May 8, 1866. *Parker, Mason, Balcom* and *Boardman,* Justices.]