Armstrong *v.* Bicknell.

---

JAMES ARMSTRONG, Appellant, *v.* ALFRED BICKNELL, Respondent.

(GENERAL TERM, SEVENTH DISTRICT, MARCH, 1869.)

An agreement for the cultivation of a farm on shares, dated March, 1866, pro-vided, that the defendant's assignors should " have one-third of all crops grown upon the above mentioned farm, for one year ; " with no other

specification respecting the term.—*Held,* such construction according with the apparent intention of the parties to the agreement as indicated by their subsequent acts, that the defendant was entitled to a third of wheat sown by him in the fall of 1866, which matured in the summer of 1867.

When a specific exception is taken to an erroneous conclusion of law, founded upon a clear and indisputable fact found by the referee, and on which alone he bases his erroneous conclusion, the appeal must be determined on the exception, and the court will not review the evidence nor presume other facts to have been found by the referee, in order to sustain the judgment.

APPEAL from a judgment on the report of a referee. The complaint averred the conversion of a quantity of winter wheat, the plaintiff's property, by the defendant, on the 15th August, 1867. The answer denied each and every allegation of the complaint, and set up a sale of the wheat to the defendant on the 9th July, 1867, under a judgment in his favor against one Clute, recovered April 13th, 1867, upon which execution had been issued, and levy made.

The plaintiff proved an agreement between the defendant and one Clute, dated March 1st, 1866, by which the defendant had let his farm to the latter to be worked on shares, "under the following consideration, viz.: That the said party of the second part shall have one-third of all the crops grown upon the above named farm for one year, excepting twenty-five acres of wheat owned by the party of the first part," and with various unimportant provisions, but without any further mention of the time during which the agreement should continue. He also proved by Clute, that the wheat in question had been "sown under that agreement," and that the latter had, by an assignment dated April 4, 1867, sold his interest in the crop of wheat so sown, to him (the plaintiff), Clute agreeing to harvest and thrash the wheat, and to deliver his share to the plaintiff. This assignment was made in consideration partly of cash paid at the time, and partly of the surrender of a note, upon which a balance of forty dollars, with some accrued interest, was due from Clute to the plaintiff. It also appeared that Clute at

the time of the assignment had assets barely sufficient to meet his liabilities.

When Clute went to harvest the wheat in July, 1867, the defendant refused him permission ; and afterward the defendant gathered the crop, thrashed, and converted it to his own use.

The referee found the agreement between the defendant and Clute as proved, and also the sale of his interest in the wheat in question to the plaintiff, for a sufficient consideration, and in good faith, and without intent to hinder, delay, or defraud creditors, and a conversion of the interest of Clute under the agreement by the defendant. He also found as a conclusion of law, that Clute had no right, title, or interest in the wheat at the time of his transfer; and that the wheat growing upon the defendants farm belonged to the latter at that time, and ordered judgment in favor of defendant.

*Adams & Strang,* for the appellant.

*Abbott & Sill,* for the respondent.

Present—Johnson, Dwight, and J. C. Smith, JJ.

By the Court—Johnson, P. J.   It is very clear that this judgment cannot be sustained upon the ground on which it was ordered by the referee.   He places his decision upon the sole ground that Clute, the plaintiff's vender, had no interest in the crop of wheat growing on the defendant's premises on the 4th of April, 1867, when he sold and assigned his interest therein to the plaintiff.   The referee finds as matter of fact that the crop was put in by Clute, under and in pursuance of the agreement between him and the defendant, and that the plaintiff was a *bona fide* purchaser for a valuable consideration without any intent to hinder, delay or defraud Clute's creditors.   He treats the sale or assignment as valid and sufficient to vest in the plaintiff all the right and title Clute might have had, not only as between them, but as

against the creditors of Clute also.   From these premises he deduces the legal conclusion that the plaintiff took nothing by his purchase for the reason that Clute had no interest in the off-going crop, but that the whole belonged to the defendant, who owned the farm, as matter of law.   This is the whole case, as made and considered by the referee in his findings of fact and conclusions of law.   It is apparent that the referee was quite mistaken in his views of the law applicable to the facts found by him in the case.   The agreement between the defendant and Clute, though in form in part a lease, was not a lease which created the legal relation of landlord and tenant between the parties to it.   It was a mere agreement by which Clute was to work the farm on shares for a single crop. In one sense the parties worked the farm together.   The defendant was to furnish teams to do the work and all the seed, and Clute was to do the manual labor and the overseeing and have one-third of all the crops raised for his share, and the defendant was to have two-thirds for his share, after it was harvested and ready for use.   Clute was thus a mere cropper and a tenant in common with the defendant in all the crops put in and raised, under the agreement, according to all the cases.   (*Foote* v. *Colvin*, 3 John., 216; *Bradish* v. *Schenck*, 8 id., 151; *De Mott* v. *Hagerman*, 8 Cowen, 220; *Putnam* v. *Wise*, 1 Hill, 234; *Dinehart* v. *Wilson*, 15 Barb., 595; *Fobes* v. *Shattuck*, 22 id., 568; *Tanner* v. *Hills*, 44 id., 428.)   The form of the agreement is of no consequence. It is the substance which determines its legal character.   The quantity or portion of the crop to which the defendant was entitled, according to the agreement, was not by the terms thereof to be paid as rent, but it was to be delivered to him, as his fixed proportion, of whatever might be raised, more or less.

The crop in question, was put in by the parties to the agreement, and " in pursuance of it," as the referee expressly finds.   It was put in as a fall or winter crop, the defendant doing and furnishing his share, according to the agreement and Clute his share.   The only words of limitation or restric-

tion, found in the agreement are, "the said party of the second part shall have one-third of all the crops grown upon the above mentioned farm for one year," excepting the crop of winter wheat then growing on said farm. These words of limitation the referee has so construed, as to work a forfeiture of the rights of Clute, at the expiration of the year, from the date of the agreement, which was the 1st of March, 1866. This in view of the acts of the parties under the agreement, is an exceedingly strict and harsh construction, which ought not to prevail if the rules of law will admit of a different one more in consonance with justice, and the plain understanding of the parties, when the crop was planted, and the ground prepared therefor. It is to be observed that no specific term is created by the lease, or any where spoken of, and nothing is specified as to when possession was to be surrendered by Clute. All there is by way of time, is what is above referred to. It is quite clear, therefore, that the parties intended by that limitation, to restrict the operation of the agreement, to a single crop of any one kind, sown or planted, which should mature in one year after such sowing or planting. This was the interpretation which the parties put upon the limitation by their acts, before any conflict of interest arose, to give a different turn to their claims. Indeed this seems to have been the defendant's understanding, when his answer was put in. "Crops grown upon the above named farm for one year," are the terms used. It is not said, "grown within one year from the date of the agreement" and obviously was not so intended. The limitation is applicable to the growth of the crop ; crops of one years growth and not over. This construction does no violence to the rules of language, or to the rules of law, and is most clearly consistent with justice, and the understanding and intention of the parties at the time the agreement was entered into, and while they were performing their several obligations to each other under it. (2 Parsons on Con., 11, § 3). It is clear, therefore, that Clute, at the time he undertook to assign and transfer his interest in the growing crop to the plaintiff,

Armstrong *v.* Bicknell.

had an interest therein which was the subject of sale and transfer; and the referee erred in holding that he had not. This would dispose of the case, and lead necessarily to a reversal of the judgment if there were no other facts proved upon the trial. But there were other facts essential to the merits of the case, upon which evidence was given, and much of which is uncontroverted, but in reference to which the referee in his report has determined nothing, as to which is established by such evidence, one way or the other. It remains to be seen what effect this is to have on the case, as it is thus presented to us. So far as the referee has gone in his finding of facts, we have seen that they do not sustain his conclusions of law, and the appellant has shown that he was in error. Should we reverse the judgment and order a new trial for this error, or should we examine the case for the purpose of ascertaining whether there are not other facts proved and which the referee ought to have found in the defendant's favor, and embodied in his report of the facts found from the evidence, which would have sustained his general conclusion of law, that the defendant was entitled to judgment.

In a case like this, where a distinct exception is taken to the conclusion of law, we must, I apprehend, review upon the exception, as we would in the case of an erroneous charge to a jury at the circuit to which exception had been taken. Here, a distinct and specific exception is taken to the first conclusion of law, drawn by the referee, from the fact found, and we must determine whether such exception was well taken. *Buckingham* v. *Payne* (36 Barb., 81); and in *Smith* v. *Devlin* (23 N. Y., 365). MASON, J., in delivering the opinion of the court, says: "It must appear that the facts found, justify the judgment, where there is an exception taken to the conclusion of law, which the referee has drawn from the facts," or the judgment should be reversed.

There are cases where the court will presume that the referee found other facts necessary to sustain the judgment, if the evidence would admit of it. But this I apprehend cannot be done, where a specific exception is taken to an erroneous con-

clusion of law, founded upon a clear and indisputable fact found by the referee; and on which alone he bases his erroneous conclusion of law.

The question whether, under the instrument of sale by Clute to the plaintiff, the interest of the former vested in the latter immediately upon its execution and delivery, has not been considered or determined by the referee; and is not here for review. The defendant might have had that question in this case, by the findings of the referee, had he desired it. I do not think we should undertake to determine, as the case now stands, upon the report of the referee, what the rights of these parties are in respect to their claims to this property, through Clute, as purchaser and judgment creditor, respectively. On that question we express no opinion. The referee has found nothing in respect to the defendant's purchase of the interest of Clute, or in respect to a sale of such interest, by virtue of his judgment and execution, deeming it wholly unnecessary, as it was in his view of the case.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.