# 𝕮𝖆𝖘𝖊𝖘

# FOURTH DEPARTMENT,

# GENERAL TERM,

## 𝕸𝖆𝖗𝖈𝖍, 1884.

---

PATRICK RILEY, Respondent, v. PLINY T. SEXTON, Appellant, JOHN J. STEBBINS, Respondent, Impleaded, ETC.

*Lease — assignment of it — when the purchaser is not chargeable with notice of the provisions of a recorded mortgage upon the real estate and its rents, issues and profits — when the description of property in a chattel mortgage is too indefinite to sustain it — effect of a general exception to a referee's conclusions of law.*

February 9, 1878, James and John Murray leased certain premises to the plaintiff for the term of five years, from April 1, 1878, at the annual rent of $700, payable December first in each year. June 1, 1879, the Murrays, to secure the payment of a pre-existing debt, executed to one Sexton their bond to secure the payment of $15,000, with interest thereon semi-annually, secured by a mortgage which covered, with others, the premises in question. The mortgage was duly recorded in the county clerk's office December 3, 1879. It provided, among other things, that the mortgagors pledged "as additional security, the rents, issues and profits of said premises, and agree that a receiver thereof may be appointed at any time and without notice at the option of said second party." The mortgagors also agreed that, while the debt exceeded $10,000, they would whenever required execute satisfactory chattel mortgages upon all growing crops and on personal property generally, then owned by them jointly or severally. Sexton, at the time of taking the mortgage, had no knowledge of the existence of the lease, or of the occupation of the premises or any part thereof by the lessees.

In April, 1880, the Murrays assigned the lease and the rents reserved thereby to one Stebbins. The consideration of the assignment of the lease to Stebbins was cash then advanced by him and an old note then canceled. Stebbins knew of

the existence of the mortgage, but not of its terms nor of its record, although he lived in the place where the clerk's office was located.

*Held,* that Stebbins was not chargeable, at the time of his purchase of the lease, with knowledge of the prior lien upon the rents of the farm acquired by Sexton by virtue of his mortgage, and that he, and not Sexton, was entitled to receive them.

To secure the payment of the amount due on the mortgage, two chattel mortgages were executed by the Murrays to Sexton, one prior and the other subsequent to the assignment to Stebbins. The first conveyed all personal property whatever owned by the mortgagors, jointly or individually, and all growing crops of all kinds on the said farms.

*Held,* that the description was so indefinite that it did not amount to a notice of the lien claimed upon the rents reserved, as against Stebbins.

A general exception to a referee's conclusions of law is not available, unless all the rulings embraced in them are erroneous.

APPEAL from a judgment, entered on the report of a referee.

This is an action in the nature of a creditor's bill, brought by the plaintiff as a judgment creditor of James Murray and James Lawless, to compel the application, to the payment of the plaintiff's judgment, of the share of the said James Murray, in certain rents reserved in and by a lease of lands executed by said James Murray and John Murray, to the plaintiff and his son Richard Riley. The Murrays owned in common two farms in Ontario county, one of 130 acres in Victor, and the other of 170 acres in Farmington. On 9th February, 1878, they executed a written lease of the Farmington farm to the Rileys for the term of five years from 1st April, 1878, at the yearly rent of $700, payable first December in each year. The rent for the first year was paid to John Dwyer, and for the second year to James C. Jackson, to whom the lease and the rent for those years, respectively, were assigned by the lessors. And of the rent maturing 1st December, 1880, the sum of $583.93 was assigned by the lessors to the defendant Stebbins, 1st April, 1880. On 1st June, 1879, the defendant Sexton held six mortgages executed by the Murrays, on both of said farms, which had been assigned to him some time previously, on which was then due in the aggregate the sum of $14,976.57. On that day he advanced to them the further sum of twenty-three dollars and forty-six cents, and took from them another mortgage on said farms and a certain cedar swamp, conditioned for the payment of the sum of $15,000, with interest semi-annually. That mortgage was not intended to

affect the lien of the prior mortgages, but was given as additional security for the payment of the debt which they were intended to secure. By its terms the principal was made payable " on any interest day in such instalments of full hundreds of dollars, not more than five hundred in any calender year, as either party shall give to the other, three months' written notice of being required or intended." The said mortgage also contained a provision in the following words : " And they (the said mortgagors) do also pledge as additional security, the rents, issues and profits of said premises, and agree that a receiver thereof may be appointed at any time and without notice at the option of said second party, * * * in case of any default," etc. It was also agreed that in case of any default the whole amount should become due, at the option of the mortgagee. And the mortgagors agreed, that while the debt exceeded $10,000 they would, whenever and as often as desired, execute to the mortgagee satisfactory chattel mortgages upon all growing crops and on personal property generally, then owned by them jointly or severally. That mortgage was recorded on 3d December, 1879, in the office of the clerk of Ontario county. On 3d July, 1879, the mortgagors, in pursuance of their agreement, executed to Sexton their chattel mortgage for $10,000 on all their personal property and all growing crops on said farms, which chattel mortgage was duly filed about the time of its date, and duly re-filed 6th July, 1880. On 2d August, 1880, they executed another chattel mortgage to Sexton to secure $10,000 on the real estate mortgages, by which they mortgaged all their personal property and all crops then or thereafter growing on said farms, " and all rents, issues and profits and products of said lands at any time," which mortgage was duly filed 3d August, 1880. The referee found the facts above stated, and also that John Murray is the father of James Murray; that John lived on the Farmington farm and James on the Victor farm for several years before 1st June, 1879 ; that Sexton had no knowledge of the existence of said lease until the commencement of this action, nor that anyone except said Murrays occupied either of said farms or claimed any right to any of the rents, issues and profits of the same; that John Murray occupied the only house on the Farmington farm at the time said lease was executed, and still occupies a part of it, and said Richard Riley, one of said lessees,

who is a brother-in-law of James Murray, occupied the other part of said house and worked part of said farm, and that Sexton had no knowledge of such occupation by Riley prior to the commencement of this action. The referee found that the consideration of the assignment of the lease to Stebbins was his payment to the lessees of $419.36 in cash, and his canceling a note which he held against them, on which was then due the sum of $150.81; that at that time Stebbins knew of the existence of the $15,000 mortgage owned by Sexton, but had never seen it nor the record of it, and did not know of any special clause in the same, nor that it gave a lien on crops or rents, issues or profits; nor had he ever heard before said assignment that Sexton had any claim on said lease; and that he lived in Canandaigua where the clerk's office of Ontario county is located, and wherein said real estate mortgage is recorded; that on 1st December, 1879, there was due to Sexton for interest on his said mortgage the sum of $525, of which the Murrays paid during December, 1879, $300, and 4th April, 1880, $180 more, leaving unpaid forty-five dollars, and nothing further has since been paid on said mortgage.

The complaint alleged that the said mortgages were executed to Sexton, and received by him with intent to defraud the creditors of the mortgagors, but that allegation was negatived by the findings of the referee.

The referee found as conclusions of law that Stebbins is entitled to the sum of $593.93 rent due on said lease 1st December, 1880; that the plaintiff is entitled to have the remainder of the rent due, and to grow due on said lease, applied to the payment of his judgment and costs, and Sexton is not entitled to the same; that the plaintiff is entitled to an injunction restraining Sexton and James Murray from collecting James Murray's share of said rent; that a receiver be appointed, and that the plaintiff and Stebbins are entitled to their costs of the action to be paid by the receiver out of the moneys to be collected by him on said lease.

*Charles McLouth*, for the appellant.

*John Gillette, Jr.*, for the plaintiff, respondent.

*Comstock & Bennett*, for the defendant, respondent.

SMITH, P. J.:

The appellant is met at the threshold by the objection that his exception to the referee's conclusions of law is so general that it raises no question for review. There is but one exception and it is in the following form: "The defendant Pliny T. Sexton excepts to each of the findings of law of the referee in this action." It is stating the rule too broadly to say that a general exception to several rulings is of no avail whatever; that such an exception is not available, unless all the rulings embraced in it are erroneous, has been held frequently (*Lefler* v. *Field*, 50 Barb., 410; *Magie* v. *Baker*, 14 N. Y., 435), and that is the extent to which the cases go. Within this rule if either of the conclusions of law to which the exception is directed is correct the entire judgment must be affirmed.

The correctness of the conclusion that the defendant Stebbins is entitled to the rent due on said lease on the first day of December, 1880, amounting to the sum of $593.93, depends upon whether Stebbins is chargeable with notice, at the time of his purchase, that Sexton then had a prior lien upon the rents of the farms in question. Sexton's claim to such lien must rest solely upon the clause in the $15,000 mortgage, by which the mortgagors pledged to him as security the "rents, issues and profits" of the premises. For, of the two chattel mortgages, the earlier one only was executed prior to the assignment of the lease to Stebbins, and that did not transfer the rents, or the lease, in terms, but conveyed "all personal property whatever" owned by the mortgagors, jointly or individually, and " all growing crops of all kinds " on said farms. A description so indefinite cannot be said to amount to notice of the lien on the rents, now set up by Sexton, in opposition to the claim of Stebbins.

The $15,000 mortgage was a mortgage of real estate, and was duly recorded as such. The referee found that Stebbins knew that Sexton had said mortgage, but he had never seen it nor the record of it, and did not know that it contained a special clause purporting to give a lien on crops, or rents, issues and profits, nor had he heard that Sexton had any claim on the lease. Stebbins was not purchasing an interest in real estate, and so was not put on inquiry as to the contents of Sexton's mortgage. He was bargaining for a mere chose in action, to wit, the written promise of the lessees to pay a stipulated sum of money as rent. It is true that rent to grow due

is regarded as realty as between the grantor of the reversion and his grantee, so that, as between them it will pass as an incident of the estate, if not expressly reserved, and in such a case it does not pass as a chose in action. (*Van Wicklen* v. *Paulson*, 14 Barb., 654.) But where one who is the owner of the reversion, and also the lessor, transfers to a third person the written obligation of the lessee to pay money as rent, the thing transferred, as between them, is a mere chose in action, and not real estate. Stebbins, therefore, had no occasion to inquire as to the contents of Sexton's real estate mortgage.

So far as the question of notice is concerned, the case is like that of the growing grass in *Wood v. Lester* (29 Barb., 145), cited by the appellant's counsel. There the growing grass was so far a part of the realty as that it would have passed under a deed of the land, unless specially reserved. (4 Kent's Com. [7th ed.], 518; *Foote* v. *Colvin*, 3 Johns., 216; *Wintermute* v. *Light*, 46 Barb., 282.) Wood held a mortgage upon the farm, duly recorded as a mortgage of real estate, which in express terms gave him a lien upon "all the crops of every kind upon said premises." Lester, the judgment creditor, had actual notice of the existence of the mortgage when he levied on the grass and bought it in at the execution sale; and the only consideration for the sale was the application of the amount of his bid upon a pre-existing debt held by him against Power, the mortgagor and execution debtor; yet it was held that there was no evidence that Lester had any notice or knowledge of Wood's lien on the grass, and that he must, therefore, be deemed a *bona fide* purchaser and permitted to hold it discharged of Wood's lien thereon. Upon the authority of that case it must be held that the facts found by the referee do not show notice to Stebbins, actual or constructive, of Sexton's lien on the rents reserved by the lease.

It is contended by the appellant, that as to the amount which Stebbins paid by canceling a pre-existing debt, he is not a *bona fide* purchaser. There is no exception raising that point, and the record does not show that it was suggested at the trial. It comes now too late. Besides, *Wood* v. *Lester* (*supra*), seems an adverse authority.

It is also contended that the claim of Stebbins against his codefendant Sexton cannot be litigated in this action, inasmuch as Stebbins has not complied with the requirements of section 521 of

the Code of Civil Procedure, in respect to demanding relief in his answer and serving the answer on the attorney of his co-defendant before trial. We think that the defendant Sexton has waived that objection. The appeal book does not show that it was taken at the trial, and the fact that the referee determined the rights of the defendants, as between themselves, without any allusion being made by any one to the form of the answer, indicates very clearly that Sexton waived, as he might do (*Edwards* v. *Woodruff*, 90 N. Y., 396, 400, 401), a compliance with the provisions of the statute referred to. For that reason he cannot urge it now.

As the conclusion of the referee in respect to the rights of Stebbins is correct, the general exception is not well taken and the judgment must be affirmed in all respects.

Judgment affirmed, with costs of the appeal to each respondent to be paid by the appellant.

HARDIN and BARKER, JJ., concurred.

So ordered.