Barker, P. J.
—In this action the plaintiff seeks to establish his title to a quantity of wheat grown and prepared for market on his own farm, and to regain the possession thereof.
The defendant denies the plaintiff’s title and claims to be the owner by virtue of the terms of a written contract between himself and the plaintiff for the working of the said farm on shares. No other issue than the one of title to the property was litigated on the trial, and all the rulings to which the plaintiff excepted relate to that question. In March, 1885, the parties made an agreement by the terms of which the defendant was to work on shares the plaintiff’s farm for the term of five years. The wheat in question was a part of the crop which the defendant sowed in 1885 and harvested and prepared for market in the season •of 1886, and after he had abandoned the possession of the farm in March of that year.
The form and terms of the agreement are, in most respects, the same as those usually found in contracts of this character. It is recited therein that in consideration of the covenants and agreements of that party of the .second part, who is the defendant, the party of the first *466 part, the plaintiff: “Does hereby agree to permit the party of the second part to work the farms of the party of the first part, * * * said permit to continue from the 1st of March, 1885, until the 1st day of March, 1890, and the party of the second part does hereby agree to do and perform all the work and labor on said farms during said term necessary to conduct the farming in first class manner.” Each party was to furnish one-half the seed, and the grain was to be equally divided in the measure. The defendant was to sow at least thirty acres of winter wheat each year,, and to plant and cultivate so much of other crops as the plaintiff might require. Both parties were to reside on the premises in separate houses, the plaintiff to have the privilege of keeping for his own use a certain number of cows and horses to be cared for by the defendant. There were many other stipulations relating to the mode and manner of working the farms, which it is unnecessary to mention. The defendant removed from the premises in April, 1886, with the intention not to return and manage and cultivate them for the balance of the terms When the wheat was ripe, in July, the defendant harvested it and threshed and cleaned the same on the premises, taking away one-half and leaving the other half for the plaintiff. This action is for the part removed.. After the defendant left in the spring the plaintiff resumed the management of the farms and weeded the wheat of the. chess and rye growing therein.
By this agreement the legal relation of landlord and tenant was not created. The parties to the agreement became tenants in common of the grain and. the other products of the farms produced by the labor and care of the defendant. Putnam v. Wise, 1 Hill, 234; Taylor v. Bradley, 39 N. Y., 129; Armstrong v. Bicknell, 27 Lans., 216.
It is now well settled by all the more recent decisions, that the form of the agreement is not controlling in determining whether the relation of landlord and tenant has been created; that it is the substance of the contract which determines its legal character. In the division of property, growing crops are classed as personal property, and they may be sold on execution and the title thereto transferred by a parol agreement, and as between the heirs-at-law and the personal representatives of a deceased person, the latter take title. Whipple v. Foot, 2 Johns. R., 418; Bank of Lansingburgh v. Crary, 1 Barb., 542; Evans v. Roberts, 5 Barn. & Cress., 829.
Under this rule, the defendant has a legal title to an undivided half of the growing crop of wheat, unless the same was lost by a non-performance of the agreement | on his part. . His share could have been levied upon and sold by *467 Ms creditors under execution against Ms property, and when the crop matured, the purchaser would have been ■entitled to his share of the wheat. The question arises, what was the legal effect of the defendant’s title, by reason •of his leaving the premises and refusing to perform the agreement on his part ?
It was ruled on the trial, and stated to the jury as a legal proposition, that if the defendant quit the farm without being induced to do so by reason of some wrongful act of the plaintiff, then he could not maintain his defense and the plaintiff was entitled to a verdict; but if they found the defendant abandoned the farms by reason of the wrongful act of the plaintiff, and being without fault himself, then he was entitled to the wheat, and their verdict should be in his favor. The proposition was also expressed and stated to the jury in another form, viz: If the condition of things which existed was brought about by the plaintiff with a view to deprive the defendant of Ms substantial rights, although his act did not amount in law to an actual eviction, then the defendant, not being in fault, was entitled to their verdict. It is obvious that, by the form of expression used by the trial judge, reference was intended to be made to some act of the plaintiff, which, in the law, constituted -a breach of his contract, and not to some tortious act on his part having no relation to some condition of the agreement, either express or implied.
The plaintiff contends that the case is destitute of any ■evidence showing any act on Ms part, which, in the law, amounts to a breach of his contract, and on the trial asked the court to so instruct the jury, which was refused and an exception taken. In the early part of the year the defendant and the plaintiff disagreed as to the meaning of some of the provisions of the contract, but the conversations on those subjects were not followed by any action on the part of the plaintiff which deprived the defendant of any of his rights or interfered in any way with his management of the farm.
They also disagreed as to the proper way of preparing the ground for the planting of crops, and the plaintiff expressed his own opimon on this question by giving the defendant advice how the work should be done. This, surely, could not have harmed the defendant, although he did not welcome the advice. At times their conversation concerning the operations on the farm was curt and uncivil, on the part of the plaintiff, which, at the most, can only be characterized as mere fault finding. This behaviour, disconnected with what afterwards occurred, did not justify the defendant in abandoning the place, and refusing to perform Ms contract. The defendant was to trim and care for the *468 hedge growing on the premises. In mid-summer the plaintiff sent a man to do the work on the hedge, and the defendant forbid his interfering therewith, saying to the plaintiff that it was his own work and that he intended to do it;, and the plaintiff replied that he should insist on doing the work, and would make him pay for it, and, as the defendant testified, applied to him a mean and vulgar epithet, accompanied with the further remark, “you will get off this farm by next spring; you cannot stay here, I will have you in jail.” The defendant says that he replied to this statement, that there was no need or resorting to harsh means as he was willing to leave and did not want to stay and quarrel and fight in that way. In the fall they had another disagreement about the manner of fastening up the granary door, and each used harsh language and the defendant swears that the plaintiff then said: “There is no use talking, I want you to get off this farm by the 1st of April. I will lock you up before a month. I will have you in jail. You shall not be here.” In December, another altercation took place over a trifling matter and the plaintiff again said to the defendant “I want you to leave and I will show you out into the road before the 1st of March.” All this evidence the plaintiff denied, and according to his version of their difficulties, the defendant provoked the plaintiff to utter the threats in which he indulged.
Assuming, as we must, in disposing of the question presented by the exception, that the defendant’s story is true, we are to determine whether this behavior on the part of plaintiff constituted a breach of the agreement on his part. It did not violate any express term of the agreement, nor did it amount to an expulsion of the defendant from the premises, and the court so charged the jury.
If, however, it can be fairly said that the language of the plaintiff had the effect to deprive the defendant of the full and beneficial enjoyment of the premises as stipulated in the contract, then such conduct constitutes a breach of an implied condition of the contract and-amounts to a justification for the action of the defendant in removing from the premises. The language used by the plaintiff was provoking and insulting in its character, and its natural operation and effect was to deprive the defendant of the privilege-secured to him by the contract of having a quiet and peaceful home on the premises, free from the annoyance and disturbance of the plaintiff.
We are of the opinion that the conduct and behaviour of the plaintiff was such as to constitute a breach of the contract on his part and justified the defendant in removing from the premises and that the judgment should be affirmed.
*469 The court instructed the jury, at the request of the plaintiff that, if they should find that the agreement between the parties under which the defendant worked the farm was rescinded by mutual consent, and there being no reservation by either party of any rights under the contract, the defendant would have no right to enter the premises thereafter to gather the crops therefrom. These instructions, in which both parties concurred, are based on the proposition, that where both parties consent that the contract be dissolved, the rights of each under the same are ended. Graves v. White, 87 N. Y., 463.
The plaintiff asked the court to charge the jury, that if the plaintiff by his conduct justified the defendant in treating .the contract as broken and for that reason the defendant abandoned the premises and ceased to work the farm then he could have no right of action thereafter to the growing crop, but his redress, if any he had, would be for damages for a breach of the contract by the plaintiff. This was rejected and the plaintiff excepted. There was no error in this refusal for the reason that the plaintiff, by his action, justified the defendant in treating the contract as broken on the part of the plaintiff, and he could refuse a further performance on his part and abandon the premises without abandoning the contract. As the contract remained in force so far as the defendant was concerned he could maintain an action thereon for the damages he suffered by reason of the plaintiff’s breach of the same. But we are unable to appreciate the argument that the defendant lost his title to the growing crops by abandoning the premises, which he was justified in doing, by reason of the plaintiff’s non-performance of the agreement.
The growing crop of wheat was personal property, in which the defendant had the title to the undivided one-half. The wheat, in its growing state, was one of the products of the farm, produced by the labor of the defendant, in pursuance of the terms of the agreement. His interest in the same was his reward for his labor. The defendant was guilty of no wrong, as he performed the agreement on Ms part, and was willing to go on with the same, until defeated by the plaintiff’s own action; and the latter is in no position to claim that the defendant had forfeited Ms title to this or any other item of property wMch had a tangible existence when he abandoned the premises. Suppose the defendant had remained ©n the premises until the crop had matured, and was ready to be harvested, and then the plaintiff had wrongfully interfered and prevented the defendant from harvesting the wheat. Can it be justly said that the defendant’s title was lost, and thereby forfeited to the plaintiff ? If the plaintiff had threshed and prepared the wheat for market, we think the defendant’s title would have been per- *470 feet to an undivided share of the same, and on a demand and refusal he could have maintained an action as for a conversion of the same. It is undoubtedly true that the defendant could have altogether abandoned his interest in the growing crop, and maintained an action upon the contract for damages, and the value of his interest in the same, could have been recovered as damages for a breach of the contract. If the defendant had abandoned the premises without justification, the privity between the plaintiff and the defendant, based upon the contract, would have been destroyed, and, as a legal consequence, the defendant would have lost all title and interest in the growing crop. Graves v. White 87 N. Y., 463; Kiplinger v. Green, 28 Northwestern R., 121.
Whenever a term, created by a lease, is terminated by the wrongful act of the tenant himself, he is not entitled to the emblements. 2 Blackstone’s Com., 145; 4 Kent’s Com., 73; Samson v. Rose, 65 N. Y., 411; Taylor’s Landlord and Tenant, § 543.
We have reached the conclusion that the judgment should be affirmed, with costs to abide event.
All concur.