[Lancaster, June 3, 1829.]

MYERS and another, Assignees of Myers, *against* WHITE.

IN ERROR.

The sheriff is not justified in selling, under a *Levari Facias*, grain growing on the mortgaged premises. And if he does so, the party to whom the grain belongs, may maintain an action of trespass *quare clausum fregit* against the sheriff, though not in actual possession of the land.

Such party is not estopped from contesting the validity of the sale, in consequence of having received from the sheriff the balance in his hands, after payment of the mortgage.

WRIT of error to the District Court for the city and county of *Lancaster,* in which the plaintiffs in error, *David Myers* and *Henry Myers,* assignees of *Peter Myers,* brought an action of trespass, *vi et armis quare clausum fregit,* against the defendant in error, *William White,* Esq., high sheriff of the county of *Lancaster.*

(Myers and another, Assignees of Myers, *v.* White.)

From the record it appeared, that *Peter Myers*, the assignor, on the 1st of *April*, 1822, executed a mortgage to *Jacob Graybill* and *Jacob Johns*, to secure the payment of 4,500 dollars, which was recorded on the tenth of the same month. No proceeding was had upon it until the 8th of *January*, 1825, when a *Scire Facias* was issued, to which defence was taken; and on the 21st of *March*, 1825, an award of arbitrators was entered in favour of the plaintiffs. No appeal having been entered, a *Scire Facias* issued on the 19th of *April*, 1825, returnable to *August* Term, by virtue of which, the mortgaged premises were sold on the 18th of *May*, 1825. In the mean time, viz. on the 15th of *January*, 1825, *Peter Myers* assigned all his property, real, personal, and mixed, for the benefit of all his creditors, except *Graybill* and *Johns*, the mortgagees. The trust was accepted by the assignees, and the assignment recorded on the day of its date. Upon the *Levari Facias*, issued by the mortgagees, their counsel endorsed a direction to the sheriff "to levy and sell the mortgaged premises, together with the grain growing thereon." Upon the day of sale, the assignees were present on the premises, and gave public written notice of the assignment; in which they stated, that they had let the plantation, &c. assigned to them for the term of one year from the 1st of *April*, then last past, for rent taken in advance, and claimed to hold the said rent, and also, the grain in the ground, as personal estate, agreeably to the true intent and meaning of the said deed. Notwithstanding this notice, the sheriff, who was indemnified, sold the grain with the mortgaged premises, and for this injury the present action was brought. One of the plaintiffs, as assignee of *Peter Myers*, received the balance which remained in the sheriff's hands, after payment of the mortgage.

On the trial, seven legal propositions were submitted to the court for their opinion, by the counsel for the plaintiffs, and nine by the counsel for the defendant, all of which, however, may be resolved into three questions.

1. Whether or not, the sheriff was justified by his writ, in selling the grain growing on the mortgaged premises?

2. Whether or not, the plaintiffs were estopped from contesting the validity of the sale, in consequence of one of them having received from the sheriff the balance of the money in his hands?

3. Whether or not, an action of trespass *quare clausum fregit*, could be maintained by the plaintiffs against the sheriff, upon the facts proved in this case?

Under the direction of the court, the jury returned a verdict for the defendant, and judgment having been rendered upon it, the plaintiffs removed the record by writ of error.

*Montgomery* and *Jenkins*, for the plaintiffs in error, cited, *Ruston* v. *Ruston*, 2 *Yeates*, 67. *Wharf* v. *Howell*, 5 *Binn.* 504. *M'Call* v. *Lenox*, 9 *Serg. & Rawle*, 309. *North* v. *Turner*, 9 *Serg. & Rawle*, 244.

(Myers and another, Assignees of Myers, *v;* White.)

. *W. Hopkins, contra,* cited, 1 *Chitty Pl.* 174. *Vanhorne* v. *Frick,* 6 *Serg. & Rawle,* 90. *Willing* v. *Brown,* 7 *Serg. & Rawle,* 467. *M'Call* v. *Lenox,* 9 *Serg. & Rawle,* 311, 314. 2 *Johns. Ch. Rep.* 442. *Patterson* v. *Swan,* 9 *Serg. & Rawle,* 16. *Floyd* v. *Browne, ante page* 121. *Powel on Mort. Ch.* 4, *page* 80. 17 *Mass. Rep.* 299. 15 *Mass. Rep.* 280. 13 *Mass. Rep.* 229. 11 *Mass. Rep.* 125. *Id.* 30. 1 *Doug.* 81, 82. *Lyle* v. *Ducomb;* 5 *Binn.* 592. *Smith* v. *Shuler,* 12 *Serg. & Rawle,* 242. 3 *Mass. Rep.* 138.

The opinion of the court was delivered by

Rogers, J.—*Peter Myers,* on the 1st day of *April,* 1822, mortgaged a tract of land to *Johns* and *Graybill,* who, on the 8th of *January,* 1825, sued out a *Scire Facias* on the mortgage. On the 15th of *January,* 1825, *Myers* and wife assigned the mortgaged premises to *David* and *Henry Myers,* the plaintiffs. At the time of the assignment, there was a crop in the ground, which passed to the assignees. The assignees leased the property to *Peter Myers,* reserving, as I understand, the crop which was levied on by the sheriff. The mortgagees having obtained judgment on the *Scire Facias,* issued a *Levari Facias* to the *August* Term, 1825, on which was this endorsement: "Sheriff will levy the mortgaged premises, together with the grain growing thereon." The principal point in the cause is, Whether the sheriff be justified by his writ, for the levy and sale of the grain growing on the mortgaged premises. It is contended, by the counsel for the defendant in error, that all leases, or other interests in lands, made or conveyed by the mortgagor subsequent to the mortgage, though before forfeiture, are void against the mortgagee: That as to him, the tenants under such leases, or persons claiming such interests, may be considered as trespassers, disseisors, and wrong-doers: That the mortgagee on notice, becomes entitled to the rent of the premises mortgaged (if let,) from the time of executing the conveyance; for the rents and profits are liable to the debt, as well as the premises themselves. And this without doubt, is the law of *England,* and results from the well settled principle, that the estate of the mortgagee, until forfeiture, still continues as at common law before the interference of the Courts of Equity. The mortgagee is entitled to an estate in the land as tenant in mortgage, in fee, or for a term of years, as the case may be. There has been an essential departure from the law of *England* in *Pennsylvania,* for the mortgagee has no estate, property, or interest in the land, until he takes possession of the property. (Vide *Rickert* and *Reed* v. *Madeira,* ruled at this term.[*]) Nor has it, as I believe, ever been understood that such a privity exists, as that a mortgagee can compel the tenant of the mortgagor to pay him the rent, whether the lease was executed either before or after the mortgage. Nor has it heretofore been considered, that as

---

[*] *Ante,* page 325.

(Myers and another, Assignees of Myers, *v.* White.)

to the mortgagee, the tenants under leases from the mortgagor, fairly and *bona fide* made, can be treated as trespassers. In *Pennsylvania,* a mortgage, as has been held in repeated decisions, although in form an absolute conveyance, is in substance but the security for a debt. The mortgagor is the owner of the land, with the same power over it as any other tenant in fee, with encumbrances, or liens, upon the property. In this case, the mortgagees have treated it as a pledge for the debt, by proceeding under the act of assembly, directing the sale of the mortgaged premises. This is a proceeding *in rem,* it is true, and must necessarily be so, where the remedy is on the mortgage itself, and not on the bond, which, for greater security, and as giving a more extensive remedy, is usually taken. In deciding the question, I throw out of view the endorsement on the writ, for that cannot enlarge the power of the sheriff. He must rest his defence on the writ itself; and in that, he is commanded to sell the premises mortgaged, without any authority whatever to dispose of the grain. As there is no difference in this respect between a judgment and mortgage creditor, this case has been virtually decided in *Hambach v. Yeates,* not yet reported, in which it was held, that grain growing in the ground, is personal property, and might be levied on and sold as such; and that it did not pass by a sale to the sheriff's vendee. *Peter Myers,* before judgment on the *Scire Facias,* had parted with his interest in the crop. At the time of the sale, all his right was vested in his assignees for the benefit of his creditors.

When this cause was first broken, I was of opinion, with the counsel for the defendant in error, that the action had been misconceived; but upon further investigation, as the assignees had reserved the right to the crop, I cannot distinguish this in principle, from *Stultz v. Dickey,* 5 *Binn.* 285. A tenant entitled to the waygoing crop, who enters and warns a third person against cutting it, may maintain trespass *quare clausum fregit,* against a wrong-doer, notwithstanding he had, previously to the trespass, given up to his landlord possession of the farm, in a part of which the crop was growing.

It has also been contended, that inasmuch as *Henry Myers,* one of the plaintiffs, received the balance of the money, the assignees are estopped from contesting the validity of the sale. In this I cannot perceive any inconsistency. It was the balance of the money after the payment of the mortgage, to which *Johns* and *Graybill* pretended to have no right, nor had the sheriff any claim. It undoubtedly belonged to the assignees, and the receipt indicates no intention to legalize the illegal seizure of the grain. In order to amount to an estoppel, it should be inconsistent with the action, which in the opinion of the court, it was not. Its effect will be, to lessen the damages, if any shall be recovered on another trial of the cause.

Judgment reversed, and a *venire facias de novo* awarded.