## Long *versus* Seavers.

103  517
150  254

1. Under the Act of June 16th 1836 (Purd. Dig. 663, pl. 149), the purchaser of the landlord's title under execution against him is entitled to the rent falling due after the acknowledgment of the sheriff's deed, whether it be payable in money or grain.

2. Where, however, the rent is payable in grain, which has been severed from the ground before the sheriff's sale of the land, the grain will not pass by said sale to such purchaser of the landlord's title.

3. Where land is let upon shares, a sale upon a fi. fa. of the landlord's share of the growing grain before actual severance does not of itself work such an implied severance as will pass the landlord's title to the purchaser under the fi. fa. as against a subsequent purchaser of the land at sheriff's sale, who obtains his deed before the rent falls due.

4. The authorities on the subject of executions upon growing crops, reviewed.

May 10th 1883.   Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Green, JJ.   Clark, J., absent.

Error to the Court of Common Pleas of *Cumberland county :* Of January Term 1883, No. 290.

This was an appeal from a judgment of a justice of the peace in a proceeding by Jacob Seavers against C. Long, David Allison, et al., to recover the value of certain wheat which had been delivered to the defendants under the following circumstances :

Cyrus Allison was the owner of a farm which was occupied by his son, David Allison, on a lease from year to year upon shares, terminating April 1st 1880.   On an execution issued in 1879 on a judgment against Cyrus Allison, the grain, then growing on said farm, was sold as the property of Cyrus Allison to the plaintiff, Jacob Seavers, on November 1st 1879.   Subsequently, on another execution, the land, which comprised the farm, was levied upon as the property of Cyrus Allison, and on January 2nd 1880, was sold at sheriff's sale to C. Long, the sheriff's deed therefor being acknowledged January 19th 1880. David Allison continued on the farm as the tenant of Long, and in the summer of 1880 harvested the grain, and delivered it to the defendants.

The defendants presented the following point :

2. The lease of the farm to David Allison from his father, Cyrus Allison, was from year to year, each year ending on April 1st.   And if the crop sown in the fall of 1879, was part of the rent of that year, then the year or term not ending until April 1st 1880, it accrued during the term, part of which passed as a reversion to C. Long, the purchaser of the farm, at the sheriff's sale in January 1880, and the landlord's share of that crop not being

[Long *v*. Seavers.]

payable until after the harvest of 1880, passed under the Act of 1836 to C. Long.

Answer. This would be 'true if it were not for the judicial sale of the growing grain on the execution of Isaac Meals, but it having been sold by the sheriff on the Meals execution, and the levy having been made prior to the levy on the execution subsequently issued on which the property was sold to C. Long, there was an implied severance of the growing grain from the land, so that on the sale to C. Long under the venditioni exponas, the land passed to him without the growing grain which had been sold to Jacob Seavers. (Second assignment of error.)

The court charged, inter alia, as follows :

" Growing grain is personal property, and may be levied upon as such by an execution creditor and sold, and such a levy and sale is regarded in the law as an implied severance of the grain from the land. The levy and sale, therefore, upon the Isaac Meals' execution of the growing grain, was an implied severance of the growing grain from the land, so that the fi. fa. that was subsequently issued to No. 45, November Term 1879, under which C. Long claims title, could not levy upon the growing grain to the prejudice of the prior levy on the Isaac Meals' execution, nor could the sale under the venditioni exponas interfere in any way with the title that passed by the sheriff's sale of the growing crop on the Meals' execution. Therefore we say to you that by virtue of the sheriff's sale and deed to C. Long, no title to the growing grain passed to him." (Third assignment of error.)

Verdict for the plaintiff for $167.36, being the value of Long's interest in said grain, and judgment thereon. The defendants took this writ of error, assigning for error the answer to their point, and the portion of the charge quoted above.

*John Hays* (*Henderson* with him), for plaintiffs in error.— Long, having obtained his deed in January 1880, prior to the termination of the lease for the year ending April 1st 1880, in which year the grain was sown, became as landlord entitled to the landlord's share of it as rent under the Act of 1836 (P. L. 783): Borrell *v*. Dewart, 1 Wright 134; Boyd *v*. McCombs, 4 Barr 146; Menough's Appeal, 5 W. & S. 432. He could have distrained for such rent though payable in kind : Fry *v*. Jones, 2 Rawle 11 ; Jones *v*. Gundrim, 3 W. & S. 531 ; Helser *v*. Pott, 3 Barr 179. The rent being payable in kind, Cyrus Allison, as landlord, had no interest in the grain until it was severed and delivered to him, and the sheriff's sale of his interest in it, therefore, passed no title to the purchaser : Rinehart *v*. Olewine, 5 W. & S. 157 ; Ream *v*. Harnish, 9 Wright 376 ; Stewart *v*. Doughty, 9 Johnson 113.

• [Long v. Seavers.]

*J. A. C. McCune,* for the defendant in error, cited Stambaugh v. Yeates, 2 Rawle 161 ; Myers v. White, 1 Rawle 356 ; Bear v. Bitzer, 4 Harris 175 ; Groff v. Levan, 4 Harris 179 ; Hershey v. Metzgar, 9 Norris 217.

Mr. Justice GREEN delivered the opinion of the court, May 25th 1884.

It is true that grain growing in the ground is personal property and may be seized and sold upon execution : Hershey v. Metzgar, 9 Norr. 218. But that proposition in its generality relates to the interest in the grain of the person in possession. Where land is leased by the owner to a tenant upon shares, the landlord is entitled to his share of the grain when it is harvested : Lamberton v. Stouffer, 5 P. F. Smith 284. Before that the landlord cannot enter upon the land demised to take his share, or do any other act inconsistent with the tenant's right of possession. Under the Act of June 16th 1836, Purd. 663, pl. 149, it is undoubted that the purchaser of the landlord's title under execution against him, is entitled to the rent falling due after the acknowledgment of the sheriff's deed whether it is payable in money or grain. Where, however, there has been a severance of the landlord's share of the grain before the sheriff's sale of the land, that share does not pass by the sale. All this was ruled in Hershey v. Metzgar, supra. The test is the severance. In Hershey v. Metzgar, there was a levy under a fi. fa. upon the owner's interest in his growing grain, and he elected to take the grain under the exemption law, and it was appraised and set apart to him, with the knowledge and without the objection of the plaintiffs in the judgment who subsequently purchased the land. This was held to be a severance. In Fullerton v. Shauffer, 2 Jones 220, it was held that where by the terms of the lease the tenant was to retain the rent, and apply it to the payment of a debt of the lessor for which the tenant was surety, this was such an appropriation of the rent in advance, that no rent was due after the subsequent sheriff's sale of the land, and hence none passed to the purchaser. In the present case the question is whether a sale upon a fi. fa. of the landlord's share of the growing grain before actual severance works, of itself, such a severance as passes his title to it, as against a subsequent purchaser of the land. If the share were a subject of levy and sale upon a fi. fa., of course this result would be accomplished. But we think it is not. The landlord has no title to his share of the grain until it has been harvested : Lamberton v. Stouffer, supra. The whole of the grain while it is growing belongs to the tenant, and he must deliver to the landlord his share of it after severance. This, of course, is in the absence of special contract to the contrary. Thus we said in Rinehart v. Olwine,

5 W. & S. on p. 163, "Then as to the title of a tenant to the grain in the ground where by the terms of the lease, the landlord is entitled to a share of it, deliverable in the bushel.   The better opinion seems to be, that it is property of the tenant, and until the grain is severed and delivered to the landlord, he has no interest in the thing itself.   If he sells it, it goes to his vendee, and the landlord cannot pursue it in his hands."   We held the same doctrine in Ream *v*. Harnish, 9 Wright 376, THOMPSON, J., saying, speaking of the landlord's share, "Until delivered by the tenants the landlord had no title to any part of it."   Stambaugh *v*. Yeates, 2 Rawle 161 is cited by the defendant in error as ruling that a sheriff's sale upon a fi. fa. of the landlord's interest in the growing grain under a lease on shares, would pass title as against a subsequent purchaser of the land at sheriff's sale. Without discussing that case at length it is enough to say that after what has been said of it by this court on different occasions it cannot be regarded as authority for that extreme doctrine. Judge KENNEDY thus speaks of it in Bank of Pennsylvania *v*. Wise, 3 Watts on p. 305 : " It has also been urged that rent comes in lieu of the emblements of the land, and that as it has been ruled by this court in the case of Stambaugh *v*. Yeates, 2 Rawle 161, and recognized in Myers *v*. White, 1 Rawle 356, that the purchaser at sheriff's sale is not entitled to the emblements, he ought not, for the same reason to have rent, or at least such rent, as might by an apportionment be considered a proper equivalent for the enjoyment of the land up to the time of the sale.   In answer to this it may be sufficient to state that the law makes a very different disposition of the corn or grain growing on the land at the death of the owner in fee, where it was sown by him, from what it does of the rent which has not become payable at the time of his death, for land of which he dies the lessor and owner in fee.   In the first case the grain growing upon the land is considered personal estate, and as such goes to the executors or administrators ; but in the latter case the rent is considered as appertaining to the real estate as incident to the reversion in fee and passes with it to the heirs." An examination of the opinion in Stambaugh *v*. Yeates, shows that it was decided upon the general principle that grain growing in the ground is personal property, and therefore is subject to levy and sale upon a fi. fa.   There was no attempt to distinguish between grain growing on land occupied by the owner, and that which was growing upon land leased to a tenant.   The decision was followed, however, in the case of Smith *v*. Johnston, 1 P. & W. 471, in which it was held that by a sale, conveyance and delivery of possession of land, the grain growing thereon does not pass to the vendee : Stambaugh *v*. Yeates, was decided in 1828 and Smith *v*. Johnston in 1830.   The latter case came up again

in 1832, as Johnston v. Smith, 3 P. & W. 496, and its apparent doctrine was practically reversed by holding that the landlord's right to the share reserved by the lease did pass to the purchaser unless separated by an express reservation.   Judge KENNEDY described the interest of the landlord with more accuracy than had before been observed.   He said on p. 501, "He parted with his right and all claim to the products of the land while growing upon it, during the continuance of Smith's interest in the possession and use of the same, under his contract with Clark, as completely as if he had let the farm to Smith for a money rent.   Clark therefore had no right whatever to an interest in the grain grown by Smith, and growing upon the land at the time he sold and conveyed it to Johnston."   In Wilkins v. Vashbinder, 7 W. 378, it was held that a conveyance of land conveys the grain growing upon it to the purchaser, and that the case of Smith v. Johnston, 1 P. & W. 471, was erroneously decided.   In Cobel v. Cobel, 8 Barr, COULTER, J., on p. 346, said, "There have been conflicting decisions by this court upon the question whether grain growing is personal property or not. In Stambaugh v. Yeates, and subsequently in Johnson v. Smith, it was held that it was personal property, and did not pass with a conveyance of the land.   But in the case of Bank v. Wise, 3 Watts 394, where the point incidentally arose, it was ruled that grain growing on the land did pass by the conveyance of the fee unless specially reserved.   Judge COULTER evidently refers to Smith v. Johnston and not to Johnson v. Smith, as the latter case holds the opposite doctrine, and the error is repeated a few sentences further on in his opinion.   In the case of Bittinger v. Baker, in 5 Cas. on p. 68, LOWRIE, J., referring to Stambaugh v. Yeates, Smith v. Johnston, and also to Myers v. White, 1 R. 353, said, "But we can make no use of them, for they are all erroneous, and have all been corrected by the decisions, declaring that all rent in grain or in money falling due after a private sale of the land, or after a judicial sale with the deed acknowledged, and all grain of the vendor or debtor then growing on the land, go to the vendee, and no assignment of them is good against the sheriff's vendee," citing numerous authorities: Stambaugh v. Yeates, has been referred to with some degree of approbation in two of our later decisions : Bear v. Bitzer, 4 Harr. 175, and Hershey v. Metzgar, 9 Norr. 217. But in both those cases it was only the abstract doctrine of the former case that was quoted and applied, to wit, that growing grain was personal property and liable to be seized and sold as such by judicial process.   Abstractly this is true, and in the concrete it is true also, if the grain in question is the property of the person in possession, as was the fact in both Bear v. Bitzer and Hershey v. Metzgar.   The facts of those cases re-

quired the application of the doctrine in the terms above stated, because it was the grain of the owner of the land who was himself in possession. But in Bear *v.* Bitzer, the purchaser of the grain under the fi.-fa. took no title, because there was a prior sheriff's sale of the land, under which the title to the grain passed with the land to the purchaser. Neither of these cases, however, affirmed that where the land was let to a tenant on shares, the interest of the landlord in the growing grain could be seized and sold upon execution before severance, so as to pass a good title thereto as against a subsequent purchaser at sheriff's sale of the land, also before severance. In other words neither of the cases referred to, held that the judicial sale under the fi. fa. against the landlord, would, of itself, constitute a severance. That is the question in this case, and for the reasons stated, we are of opinion that no severance was wrought by the sale under the fi. fa. to Seavers, and hence he took no title to the landlord's share of the growing grain, as against Long who subsequently purchased the land at sheriff's sale, and obtained his deed before the rent fell due.

Judgment reversed and venire de novo awarded.