## Cornelius Loose, Appellant, *v.* Willoughby Scharff.

*Landlord and tenant—Way-going crop—Sale under fi. fa. and vend. ex. of landlord's interest.*

Where a crop of winter grain sown by the way-going tenant is, by virtue of a local custom, the property of the landlord, a sale under a fi. fa. of the landlord's interest in the growing grain before actual severance does not of itself work such an implied severance as will pass the landlord's title to the purchaser under the fi. fa., as against a subsequent purchaser of the land, at sheriff's sale, who obtains a deed before the tenant's lease expires.

Argued Nov. 9, 1897.    Appeal, No. 96, Oct. T., 1897, by plaintiff, from judgment of C. P. Berks Co., Oct. T., 1895, No. 83, on special verdict in favor of defendant.    Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ.    Affirmed.

Amicable action in assumpsit.    Before ENDLICH, J.

On the trial of the case the jury found the following special verdict:

1. Plaintiff became the purchaser in December, 1894, on an execution issued at his instance and levied upon the winter crops in the ground of the farm of Hibschman (defendant in said execution) in the possession of J. L. Loose, as tenant for a term beginning April 1, 1894, and ending April 1, 1895.

2. Prior to the levy of said execution said Hibschman had not rented said farm to said J. L. Loose for another year beginning April 1, 1895.

3. Defendant on February 16, 1895, became the purchaser of said farm under execution on a judgment entered to No. 83, December term, 1894, J. D. in a sci. fa. sur mortgage upon said property.

4. The tenancy of said J. L. Loose, under the lease, beginning April 1, 1894, was under and subject to the custom prevailing in this county, that the incoming tenant has the benefit of the winter crops in the ground at the time, and is bound, when going, to leave a crop of winter grain in the ground in place of that which he found.

5. The value of the crops levied upon by plaintiff was, when

154 LOOSE *v.* SCHARFF.

Statement of Facts—Opinion of Court below. [6 Pa. Superior Ct.

harvested in the summer of 1895, after deduction of the expense of harvesting, $207, and said crops were retained by defendant. If upon the whole matter thus found the court should be of opinion that the plaintiff has a good cause of action, then we find for the plaintiff and assess his damages at $227.34. If otherwise, we then find for defendant, as per special verdict filed.

A motion for judgment on a special verdict made by the plaintiff was overruled and judgment was directed to be entered for the defendant in the following opinion by ENDLICH, J.:

Counsel for plaintiff contends that the long line of decisions and dicta on the question of the landlord's interest in grain in the ground, where the latter has been rented upon shares, and the liability of that interest to seizure for his debts (Carson v. Blazer, 2 Binney, 475 ; Stultz v. Dickey, 5 Binn. 285 ; Biggs v. Brown, 2 S. & R. 14; Myers v. White, 1 R. 353 ; Stambaugh v. Yeates, 2 R. 161; Demi v. Bossler, 1 P. & W. 224 ; Forsythe v. Price, 8 W. 282 ; Rinehart v. Olwine, 5 W. & S. 157 ; Bittinger v. Baker, 29 Pa. 66 ; Burns v. Cooper, 31 Pa. 426 ; Ream v. Harnish, 45 Pa. 376 ; Helme v. Ins. Co., 61 Pa. 107 ; Narewood v. Wilhelm, 69 Pa. 64; Hershey v. Metzgar, 90 Pa. 217 ; Shaw v. Bowman, 91 Pa. 414; Long v. Seavers, 103 Pa. 517 ; Baker v. Lewis, 150 Pa. 251), is inapplicable to a case governed by the custom found to exist in this county. Be it so. Yet notwithstanding this custom, which simply requires the tenant to leave a growing crop when he goes, where he found one when he came, it is quite clear that, unless there had been a previous severance, actual or implied, of the growing grain from the soil, the sale of the realty was bound to carry with it the title to the grain: Wilkins v. Vashbinder, 7 W. 378 ; Bear v. Bitzer, 16 Pa. 175; Backentoss v. Stahler's Adm'r, 33 Pa. 251 ; Heysham v. Dettre, 89 Pa. 506; Hershey v. Metzgar, supra, p. 219; Long v. Seavers, supra, pp. 521, 522. The controlling inquiry, therefore, in this case must be whether the execution of the landlord's creditor, levied, while the farm was in the possession of the lessee, upon the winter grain put out by him and in the ground, as personalty, constituted a severance of the grain from the realty, by reason of which severance the former passed to the purchaser under said execution and not to the purchaser at

the subsequent sale of the land under proceedings upon the mortgage thereon. Manifestly, if the interest of the landlord in the growing grain, at the time when it was levied upon, was not liable to seizure as personalty, no such effect can be attributed to the execution. Now, it is said by Mr. Justice GREEN, in Long v. Seavers, supra, p. 519, that the proposition, that grain growing in the ground is personal property and may be seized and sold upon execution, relates, in its generality, only to the interest in the grain of the person in possession. The reason of this limitation is obvious and demonstrates its applicability without regard to the matter of differing customs as affecting the rights and duties of the tenant. Where a man has himself sown his own land with his own grain, he owns the latter both as grain, which is personalty, and as part of the land into which he has put it, which is realty. While he remains in absolute control, i. e., in possession of the land, with the grain in it, he is, of course, competent to treat the grain as part of the land or as something separate from it, i. e., either in connection with the land, as realty, or apart from it, as personalty. Consequently his creditors have the same right. An execution and levy upon the grain as personalty, being, therefore, lawful, will effect a legal severance of the grain from the soil, and a sale of the former under such execution will invest the purchaser with the title to the grain. But where grain has been put out by a tenant, while in possession of the land under his lease, the landlord, during the continuance of the term and the tenant's possession, is the owner of the grain in the soil by virtue only of his ownership of the land. That is, he owns it as part of his land, which is realty, and as such only, therefore, can it be reached by his creditors in connection with, as appurtenant to the land. Hence an execution and levy upon it as personalty, apart from the land, is an impossible thing. Such an execution and levy consequently cannot work a severance of the grain from the soil and a purchaser under it takes no title as against a subsequent execution purchaser of the land with the grain in it. It follows that, in this case, the defendant is entitled to judgment upon the verdict.

And now, June 21, 1897, plaintiff's motion for judgment upon the special verdict is overruled, and it is ordered that, upon payment of the verdict fee, judgment be entered for defendant.

Judgment for defendant. Plaintiff appealed.

*Error assigned* was in directing judgment to be entered in favor of the defendant on special verdict.

*H. R. Green*, with him *B. Y. Shearer* and *A. G. Green*, for appellant.

*Morris H. Schaffer* and *Adam B. Rieser*, for appellee.

PER CURIAM, December 13, 1897:

This dispute arose over the title to a growing crop of grain. The plaintiff claimed as purchaser at sheriff's sale of the crop as personalty; the defendant as purchaser at a subsequent sheriff's sale of the land.

It was decided in Long v. Seavers, 103 Pa. 517, that where land is let upon shares a sale upon a fi. fa. of the landlord's share of the growing grain before actual severance does not of itself work such an implied severance as will pass the landlord's title to the purchaser under the fi. fa. as against a subsequent purchaser of the land at sheriff's sale who obtains his deed before the rent falls due. The case was precisely like the present except in this particular. There the subject-matter of the dispute was the landlord's share, reserved as rent to be delivered to him when the crop was harvested and divided; here it was the whole crop of winter grain sown by the tenant whose tenancy was under and subject to the local custom prevailing in Berks county which required him, when going, to leave a crop of winter grain in the place of that which he found. Notwithstanding this distinction the similarity of the two cases in respect of the possession at the time of the sale of the crop upon fi. fa. remains. The relation of landlord and tenant existed, and the possession of the tenant was exclusive. The landlord had not the actual or constructive possession of the land or the crop; nor had he a right to the immediate possession. He had no right to enter upon the land demised to take the crop or do any other act inconsistent with the tenant's right of possession, until the expiration of the term, and before that took place the land was sold at sheriff's sale. Under the act of 1836, the purchaser of the landlord's title to the land under execution against him is entitled to the rent falling due after acknowledgment of the sheriff's deed, whether it be payable in money or grain.

But conceding for the purpose of the case that the crop had not all the characteristics of rent, strictly speaking, still the facts as to the possession seem to bring the case within the limitation of the general rule as it was stated by Mr. Justice Green in Long v. Seavers. "It is true that grain growing in the ground is personal property and may be seized and sold upon execution: Hershey v. Metzgar, 90 Pa. 217. But that proposition in its generality relates to the interest in the grain of the person in possession." For the reasons suggested, which are more fully elaborated in the opinion of the learned judge of the court below, the judgment is affirmed.